Donald JEBIAN, Plaintiff–Appellant,

v.

HEWLETT–PACKARD COMPANY EMPLOYEE BENEFITS ORGANIZATION INCOME PROTECTION PLAN; Erisa Plan, Defendants–Appellees.

No. 00–56988.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 3, 2001.

Filed Nov. 19, 2002.

Opinion Withdrawn Nov. 25, 2003.

Opinion Filed Nov. 25, 2003.

Charles J. Fleishman, Beverly Hills, CA, for the appellant.

Joseph P. Busch, III, Gibson, Dunn & Crutcher, Los Angeles, CA, for the appellee.

Before: PREGERSON, TASHIMA and BERZON, Circuit Judges.

Opinion by Judge BERZON; Dissent by Judge TASHIMA.

## ORDER

The opinion and dissenting opinion, filed November 19, 2002, published at 310 F.3d 1173, are withdrawn and replaced by the opinion and dissenting opinion filed concurrently with this order. Judge Pregerson and Judge Berzon have voted to deny Appellees' Petition for Rehearing and to reject Appellees' Petition for Rehearing En Banc. Judge Tashima has voted to grant the petitions. The full court has been advised of the petition for rehearing en banc and no judge has requested a vote on whether to rehear the matter en banc. *See* Fed. R.App. P. 35.

The petition for rehearing is DENIED. The petition for rehearing en banc is REJECTED.

## OPINION

BERZON, Circuit Judge.

On November 19, 2002, we issued an opinion reversing the district court and remanding for further consideration. *Jebian v. Hewlett–Packard Co.*, 310 F.3d 1173 (2002). We stayed our mandate pending the Supreme Court's ruling in *Black & Decker Disability Plan v. Nord,* —— U.S. ——, 123 S.Ct. 1965, 1969, 155 L.Ed.2d 1034 (2003). We now issue a substituted opinion, reaffirming our earlier treatment of the appropriate standard of review in ERISA cases where benefits are "deemed denied" through the passage of time but withdrawing our instruction that the district court consider appellant's claims in the light of a "treating physician rule."

## BACKGROUND

Donald Jebian, now sixty-three, worked as a software engineer for Hewlett Packard continuously from 1983 to May 1995. In 1990 he began to suffer from a series of orthopedic impairments that caused him pain and made it difficult for him to move normally.

Jebian first developed bilateral shoulder pain. It turned out that he had a massive rotator cuff defect in his right shoulder, which was not diagnosed until 1995. In 1992, Jebian also began to experience back pain. Doctors determined that the cause was lumbar spinal stenosis.[1] His doctors

---

1. Spinal stenosis is a narrowing of the lumbar or cervical spinal canal that causes compression of nerve roots and resulting back pain.

agree that his stenosis is congenital rather than the result of injury. Later, Jebian was diagnosed with lumbar degenerative disc disease, which exacerbated his back pain.

Jebian stopped work in May 1994 because of intractable back pain. He had a lumbar discectomy in June 1995, the first of several surgeries. Because his back pain persisted after the surgery, he had a second surgery on his back in the fall of 1995. Dr. Stark, who examined Jebian at Hewlett Packard's request with regard to a worker's compensation claim in October 1995, predicted that Jebian would need yet another surgery on his back. Jebian also underwent two surgeries on his shoulders in 1996, one on each.

Jebian was a participant in an employee benefit plan ("the Plan") covered by the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 et seq. The Plan, self-funded by Hewlett Packard and administered by an independent claims administrator, Voluntary Plan Administrator ("VPA"), offers both short-term and long-term disability leave. Short-term disability benefits last up to thirty-nine weeks. An applicant for short term disability benefits must show that "following the onset of the injury or sickness, the Member is continuously unable to perform each and every duty of his or her Occupation."

After thirty-nine weeks, an employee still unable to work must apply separately for long-term disability benefits. Long-term benefits are granted under the Plan if "the Member is continuously unable to perform any occupation for which he or she is or may become qualified by reason of his or her education, training or experience" (emphasis added). The Plan stipulates that disability determinations for either long- or short-term benefits are to be "made by the Claims Administrator on the basis of objective medical evidence."

After first leaving work in May 1995 Jebian applied for and received short-term disability benefits. He applied for long-term benefits after the requisite thirty-nine weeks of short-term benefits. VPA initially denied the application, but on appeal reversed its decision. By the time of that reversal, Jebian had returned to work, so long-term benefits were granted retroactively only for the six-week period before Jebian returned to work.

Jebian shortly left work once again due to the same medical conditions. He tried to return to work in May 1997, but within a matter of weeks left work for a third time, this time not to return.

VPA found Jebian eligible for short-term disability benefits when he left work in June 1997. In February 1998, with the thirty–ninth week of his short-term benefits approaching, Jebian again applied for long-term benefits. VPA denied Jebian's application for long-term disability benefits on August 3, 1998.

VPA's letter of denial based its decision on two reports that it had commissioned concerning Jebian's condition: a "Work Capacities Assessment" conducted by physical therapists employed by Health-South, a company that conducts such physical assessments for insurers and employers, and an "Employability Assessment Report" conducted by a vocational consultant employed by Rehab West, a company that provides vocational assessments.

VPA's denial letter relied largely on HealthSouth's representation that Jebian could tolerate "sitting, walking, trunk bending, overhead reaching, squatting," and other functions, though the Health-South report had noted that Jebian had substantive limitations in his ability to carry out these functions. The letter also cited and adopted Rehab West's conclusion that Jebian was professionally and physically qualified to perform four occu-

pations—user support analyst, data processing auditor, sales representative for computers and electronic data processing systems, and technical training instructor. The 1998 Rehab West report was identical to one that had formed the basis for the decision to deny Jebian long-term disability benefits two years earlier (a decision that, as noted, was retracted by VPA on appeal). Rehab West did not conduct its own medical exam of Jebian. Rather, the Rehab West report concluded, in one sentence, that "[i]t also appears that these occupations are within his physical capabilities as per the medical reports provided." It is not clear from the record which medical documents were provided to Rehab West. Precisely the same sentence regarding medical reports had appeared in the 1996 Rehab West report, although Jebian's medical circumstances had changed greatly by 1998.[2] Further, the Rehab West report does not indicate that any of the jobs it suggests could be done by a person who can sit or stand for only limited time periods.[3]

In November 1998, Jebian appealed the denial of benefits. He argued that crucial records were not considered, that some medical records were misread, and that the alternative employment recommendations were based on erroneous readings of the medical information. Enclosed with his appeal was a letter from Dr. James Landes. Dr. Landes, who had examined Jebian in September 1998, reviewed medical records, the HealthSouth and Rehab West reports, and the denial letter; emphasized that Jebian is incapable of prolonged sitting or standing; and pointed out that the four jobs recommended by Rehab West all involve one or the other. Dr. Landes urged VPA to reconsider its decision.

Under the Plan's language, Jebian's "claim shall be deemed to have been denied on review" if VPA neither responds within sixty days nor informs the claimant that it could take up to sixty days longer to respond. On March 15, 1999, 119 days after receiving Jebian's appeal, VPA wrote to Jebian, responding to his objections but leaving the appeal pending to consider further medical documentation. VPA wrote to Jebian again in June 1999, stating that it was still awaiting some medical records and that the appeal therefore remained pending.

On September 29, 1999, Jebian filed his complaint in district court. Only after that, on November 5, 1999, did VPA send Jebian a letter finally denying his claim for long-term disability benefits.

The district court reviewed VPA's decision for abuse of discretion and granted summary judgment to the Plan. We reverse. We conclude that the proper standard of review of VPA's decision in this case is *de novo*, and remand for reconsideration of Jebian's claim accordingly.

## DISCUSSION

### I

A challenge to an ERISA plan's denial of benefits is reviewed *de novo* "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989).

---

**2.** In particular, Jebian had undergone two additional surgeries in the interim.

**3.** Among the occupations suggested is "data processing auditor," a job that by Rehab West's account requires frequent computer use to analyze data and write reports. There is no indication in Rehab West's report that it took into account, regarding this suggested occupation or any of the others, the impact of Jebian's limitations on prolonged sitting.

If a plan does grant such discretion, a reviewing court applies an "abuse of discretion" or—what amounts to the same thing—an "arbitrary and capricious" standard. *See Taft v. Equitable Life Assurance Soc'y*, 9 F.3d 1469, 1471 n. 2 (9th Cir.1994).

The plan before us explicitly grants discretion to decide appeals from denials of claims for benefits to the plan administrator. The pertinent language reads: "The Claims Administrator shall have the discretionary authority to construe the language of the plan and make the decision on review on behalf of the Organization."

■ The primary question before us, of first impression in this circuit, is whether a plan administrator's decision, otherwise within the administrator's discretion, can be accorded judicial deference when the purported final, discretionary decision is not made until after the claim is, according to both the terms of the plan and Department of Labor (DOL) regulations, already automatically deemed denied on review. We conclude that where, according to plan and regulatory language, a claim is "deemed ... denied" on review after the expiration of a given time period, there is no opportunity for the exercise of discretion and the denial is usually to be reviewed *de novo*. While deference may be due to a plan administrator that is engaged in a good faith attempt to comply with its deadlines when they lapse, this is not such a case.

### A

■ Jebian's letter appealing the denial of benefits is dated November 11, 1998 and was received by VPA on November 16, 1998. VPA did not respond until March 15, 1999.[4] VPA's decision after that lapse in time was in violation of both the Department of Labor's (DOL) ERISA regulations and Plan language. Both the plan and a DOL regulation, 29 C.F.R. § 2560.503–1(h)(1)(i) (1998),[5] required some written notice in response to an appeal within sixty days—even if only to establish an extension, available only where "special circumstances ... require." *Id.* The Plan also stated:

> If a claimant has not received written notice that additional time is required for review within sixty (60) days of the date his or her request for review is received by the Claims Administrator, the claim shall be deemed to have been denied on review.

*See also* 29 C.F.R. § 2560.503–1(h)(4) (1998) (similarly providing that appeals neither timely decided nor extended are deemed denied). So any appeal not responded to within the requisite time limit was deemed denied.

The regulation and the Plan further required in all instances a *final* determina-

---

4. Contrary to the dissent's suggestion (*post* at 1115–16), Jebian did not prior to March 15, 1999 refuse to provide any requested medical records. The records were not *requested* until March 15, 1999, one day before the second extended sixty-day period for deciding the appeal ran out. There was plenty of time for VPA to have made the request, and for Jebian to have replied, before the first—let alone the second—sixty-day period expired.

5. We refer to the Code of Federal Regulations as of 1998, the year Jebian's claim was filed. The pertinent regulation, 29 C.F.R. § 2560,

first promulgated in 1977, was amended in 2000. *See* Pension and Welfare Benefits Administration, 65 Fed.Reg. 70,246 (Nov. 21, 2000). The alterations apply to claims filed on or after January 1, 2002. 29 C.F.R. § 2560.503–1(*o*) (2002). The new regulation shortens from sixty days to forty-five the time allowed for initial responses to appeals from denials of disability benefits. 29 C.F.R. § 2560.503–1(i)(3)(i) (2002). Excised from the new regulation is the provision that transgressions of time limitations will result in the claim being "deemed denied." *See* 29 C.F.R. § 2560.503–1(h) (2002).

tion within 120 days (sixty days plus the sixty-day allowable extension) of the appeal. Again, the regulation and the Plan deemed any claim denied unless there was a final determination within that time limit. The Plan stated:

> If a claimant receives proper and timely notice that additional time is required for review, but does not receive written notice of the Claims Administrator's decision with respect to his or her claim within one hundred twenty (120) days after the date the Claims Administrator receives the request for review, the claim shall be deemed to have been denied on review.

See also 29 C.F.R. § 2560.503–1(h)(4) (1998) (similarly providing that claims neither timely decided nor extended on review are deemed denied).

VPA gave no written notice to Jebian between the filing of his appeal and its March 15 letter, written a day before the 120–day limit expired. The letter responded to Jebian's objections but left the case open to consider further medical documentation, without specifying until later what information might be useful. Thus even if we ignore the initial failure to respond, according to the regulation and the Plan's terms, Jebian's claim, the appeal of which was not decided within 120 days, was deemed denied on March 16.

VPA asks us, in effect, to ignore the "deemed ... denied" language in the regulation and the Plan and treat its March 15 letter as a good faith component of the "meaningful dialogue between ERISA plan administrators and their beneficiaries." *Booton v. Lockheed Med. Benefit Plan*, 110 F.3d 1461, 1463 (9th Cir.1997). By engaging in such dialogue, VPA argues, it was in "substantial compliance" with the sixty/120–day deadline regime, see *Gilbertson v. Allied Signal Inc.*, 328 F.3d 625, 634 (10th Cir.2003), and thereby retained its discretion to determine the claim. We do not agree.

*Firestone* directs us to abide by the principle from trust law that "a court of equity will not interfere to control" trustees "in the exercise of a *discretion vested in them by the instrument* under which they act." *Firestone*, 489 U.S. at 111, 109 S.Ct. 948 (internal quotation marks and citation omitted). The instrument in this case does vest discretion, but the same instrument and the regulation that governed it set time boundaries within which that discretion must be exercised. We are just as bound by the Plan language deeming denial in the event that time limits are exceeded as we are bound by the Plan language that grants discretion to the Plan administrator. Decisions made outside the boundaries of conferred discretion are not exercises of discretion, the substance of the decisions notwithstanding.

More practically, if we were to accept VPA's suggestion, use of the *language* of discretion—that is, providing reasons and asking for more information—would become a talisman by which administrators could ensure deference even when they are expressly precluded by the trust agreement from exercising discretion because the time for doing so has passed. Also, a contrary rule would allow claimants, who are entitled to sue once a claim had been "deemed denied," to be "sandbagged" by a rationale the plan administrator adduces only after the suit has commenced. See *Marolt v. Alliant Techsystems, Inc.*, 146 F.3d 617, 620 (8th Cir.1998). Our refusal to subject claimants to that eventuality parallels the general rule that "an agency's order must be upheld, if at all, on the same basis articulated in the order by the agency itself," not a subsequent rationale articulated by counsel. *Federal Power Comm'n v. Texaco, Inc.*, 417 U.S. 380, 397,

94 S.Ct. 2315, 41 L.Ed.2d 141 (1974) (internal quotation marks and citation omitted).

Analogously to the rule we adopt here, this court has interpreted a statute that imposes a deadline for United States Fish and Wildlife Service action to preclude the agency from gaining additional time to make discretionary findings. *See Biodiversity Legal Found. v. Badgley,* 309 F.3d 1166, 1178(9th Cir.2002) ("The exercise of discretion is foreclosed when statutorily imposed deadlines are not met."). Our holding is consistent as well with the rule in at least three other circuits on a similar, although separate, issue. Those circuits considered whether deference is owed to a decision to revoke benefits when that decision is made by a body other than the one authorized by the procedures set forth in a benefits plan. *Sanford v. Harvard Indus.,* 262 F.3d 590, 597 (6th Cir.2001); *Sharkey v. Ultramar Energy,* 70 F.3d 226, 229 (2d Cir.1995); *Rodriguez–Abreu v. Chase Manhattan Bank,* 986 F.2d 580, 584 (1st Cir.1993). All three circuits concluded that no deference is owed under these circumstances.

The principle underlying these wrong decision-maker cases is that although *Firestone* directs courts to defer to the decisions of plans in which their language grants discretionary authority, that deference applies only when the decision is made by the body vested with discretion. "When an unauthorized body that does not have fiduciary discretion to determine benefits eligibility renders such a decision ... deferential review is not warranted." *Sanford,* 262 F.3d at 597. Similarly, we will not defer when a decision is, under the Plan, necessarily the mechanical result of a time expiration rather than an exercise of discretion.

We note that the principle we apply in this case may apply more generally to decisions made in violation of procedures prescribed by applicable regulations or the plan itself. *Sanford* explained that "[t]he logic behind [the cases denying deference to plan decisions made by a body other than the one granted discretion] is that deferential review under the 'arbitrary and capricious' standard is merited for decisions regarding benefits *when they are made in compliance with plan procedures*" (emphasis added). 262 F.3d at 597. When decisions are not in compliance with regulatory and plan procedures, deference may not be warranted.

We have held previously that procedural violations can affect the merits determination concerning whether an abuse of discretion has taken place. *Blau v. Del Monte Corp.,* 748 F.2d 1348 (9th Cir.1984) (*abrogation on other grounds recognized by Dytrt v. Mountain State Tel. & Tel. Co.,* 921 F.2d 889, 894 n. 4 (9th Cir.1990)), ruled that "[o]rdinarily, a claimant who suffers because of a fiduciary's failure to comply with ERISA's procedural requirements is entitled to no substantive remedy," but that if procedural violations result in "substantive harm," then "a court must consider [such violations] in determining whether the decision to deny benefits in a particular case was arbitrary and capricious." *Blau,* 748 F.2d at 1353–54. *Blau* left open the question whether procedural violations influence the standard of review. 748 F.2d at 1353. Moreover, *Blau* was decided before *Firestone,* when our default standard for reviewing ERISA plan decisions was "arbitrary and capricious" rather than *de novo.*

For present purposes, however, we leave the more general issue open and decide only that where the plan itself provides that a particular procedural violation results in an automatic decision rather than one calling for the exercise of the administrator's discretion, that provision is as enforceable as the provision giving the administrator discretionary authority under

other circumstances. Deference to an exercise of discretion requires discretion actually to have been exercised. *See Mansker v. TMG Life Ins. Co.,* 54 F.3d 1322, 1328 (8th Cir.1995) ("[W]here an ERISA plan gives a plan administrator or fiduciary discretion to decide certain issues, the fact that the administrator or fiduciary fails to address or decide those issues does not exempt those issues from de novo review by the district court on summary judgment."). Deemed denials are not exercises of discretion. They are therefore undeserving of deference under *Firestone,* and a *de novo* standard of review applies.[6]

## B

The precise question in this case has not had extensive treatment in other circuits, and conclusions in similar cases vary. In *Gritzer v. CBS, Inc.,* 275 F.3d 291, 296 (3d Cir.2002), the Third Circuit applied *de novo* review to a plan that otherwise granted discretion to the administration because under the plan the employee pension claim was deemed denied. Turning to the analogy between ERISA plans and trusts, the Third Circuit stated: "Where a trustee fails to act or to exercise his or her discretion, *de novo* review is appropriate because the trustee has forfeited the privilege to apply his or her discretion; it is the trustee's analysis, not his or her right to use discretion or a mere arbitrary denial, to which a court should defer." *Id.* (citation omitted). *Gritzer* was a slightly different case from ours, however, because there the plan did not respond at all, either early or late, to the employees' claims.

In a case more akin to ours, the Tenth Circuit recently held, in *Gilbertson v. Allied Signal, Inc.,* 328 F.3d 625, 631 (10th Cir.2003), that *"Firestone* seems to require" *de novo* review of "deemed" denials. "[T]o be entitled to deferential review, not only must the administrator be given discretion by the plan, but the administrator's decision in a given case must be a valid exercise of that discretion." *Id. Gilbertson* noted it was "in harmony" with our initial opinion, since withdrawn, in this case. *Id.* at 632.[7]

The Fifth Circuit stated without discussion in *Southern Farm Bureau Life Insurance Co. v. Moore,* 993 F.2d 98, 101 (5th Cir.1993), that "[i]n our view, the standard of review is no different whether the claim is actually denied or is deemed denied." In *Daniel v. Eaton Corp.,* 839 F.2d 263, 267 (6th Cir.1988), which was decided be-

**6.** As should be apparent from the discussion in the text, the dissent's analysis of the standard of review is incorrect for two reasons.

*First,* the dissent entirely ignores the fact that the limitation on the exercise of discretion upon which we rely *is expressly contained in the plan itself.* Thus, the question is not whether "VPA relinquished the discretion granted it in the plan" by failing to respond to the appeal in a timely manner (*post* at 16661), but whether VPA is entitled to be regarded as having exercised discretion in deciding the appeal even though *the Plan itself* withdraws that discretion to decide and substitutes an automatic, unreasoned decision when the deadline is not met.

*Second,* the question here is not whether Jebian is entitled to a "substantive remedy," *Blau,* 748 F.2d at 1353, for the failure to decide the appeal in accord with ERISA. We *do not decide* that Jebian is *to be awarded* benefits, damages, or any other relief because VPA violated ERISA. Instead, we simply enforce *the Plan's own terms* regarding whether VPA retained discretionary authority over the appeal once the time limit had lapsed, and apply a *de novo* standard of review to decide *whether* Jebian is entitled to benefits. The line of post-*Blau* cases the dissent relies upon, which involved claims that benefits should be due because of procedural violations of the statute or regulations, are therefore inapposite. *See, e.g., Parker v. BankAmerica Corp.,* 50 F.3d 757, 768 (9th Cir.1995) (rejecting argument that employees should recover benefits because the administration failed to provide them with a copy of the plan on request).

**7.** We discuss *Gilbertson* further below.

fore *Firestone*, the Sixth Circuit stated that "the standard of review is no different whether the appeal is actually denied or is deemed denied." More recently, however, the Sixth Circuit, while noting *Daniel*, commented that "there is undeniable logic in the view that a plan administrator should forfeit deferential review by failing to exercise its discretion in a timely manner." *University Hosps. of Cleveland v. Emerson Elec. Co.*, 202 F.3d 839, 846 n. 3 (6th Cir.2000). *University Hospitals* left open the standard of review question, as it did not matter to the result. *Id.*

Finally, in *McGarrah v. Hartford Life Insurance Co.*, 234 F.3d 1026 (8th Cir. 2000), the Eighth Circuit refused to consider the failure to respond to an appeal as affecting the standard of review. There is nothing in *McGarrah*, however, indicating that the plan in question contained the "deemed ... denied" language at issue here. Further, here, the Plan administrator did purport to decide the appeal, albeit late, and is asking us to defer to its decision on review rather than to its original denial of benefits (which did not, of course, consider Jebian's submissions on appeal). *See Gilbertson*, 328 F.3d at 633 (arguing that *McGarrah* should be followed, if at all, only where "the claimant does not provide meaningful new evidence or raise significant new issues in the appeal").

Of these cases, we find the reasoning in *Gilbertson* and the observation in *University Hospitals* most illuminating, for all the reasons already surveyed.

### C

■ VPA maintains that even if *de novo* review applies to deemed denials where the administrator has wholly failed to comply with the Plan's or regulations' procedures, VPA deserves deference here because it was engaged in an ongoing "meaningful dialogue" with Jebian during the 120–day decision period. *See Booton*

*v. Lockheed Med. Benefit Plan*, 110 F.3d 1461, 1463 (9th Cir.1997). Just as there is good reason to avoid giving talismanic power to the language of discretion, there is reason as well to avoid endowing the sixty or 120–day deadlines with such significance that manipulation of deadlines could be employed tactically by either ERISA claimants or plan administrators. As the Tenth Circuit recently noted in *Gilbertson*, ERISA is designed to promote a good-faith bilateral exchange of information on the merits of claims, not hasty decisionmaking by administrators so as to slip under the 120–day wire or delay by claimants so as to ensure a deemed denial. *Gilbertson*, 328 F.3d at 635. We agree with the *Gilbertson* court that "inconsequential violations of the deadlines ... would not entitle the claimant to *de novo* review," *id.*, "in the context of an ongoing, good faith exchange of information between the administrator and the claimant." *Id.*

The procedural violations here were far from "inconsequential," however, and there was no such "ongoing, good faith exchange." Under the Plan and the regulations then in force, VPA should have either decided the appeal within sixty days or informed Jebian that, because of "special circumstances," it needed sixty more days. *See* 29 C.F.R. § 2560.503–1(h)(1)(i). It did neither. Nor did VPA request any further information until the 119th day, one day short of the 120–day deadline. One hundred nineteen days of "radio silence," *Gilbertson*, 328 F.3d at 636, is neither productive nor reasonably informative to the claimant. Accordingly, while our holding regarding the appropriate standard of review on "deemed denied" claims may be tempered in cases where a delinquent plan is nonetheless in substantial compliance with prescribed procedures, this is not such a case.

Because we recognize the same caveat *Gilbertson* adopted, we also reject VPA's more general policy argument that the prospect of *de novo* review for claims deemed denied through administrative inaction is apt to lead to more denials, as administrators precipitously decide claims before sixty (or 120) days have lapsed in order to secure deferential review. Absent unusual circumstances, an administrator engaged in a genuine, productive, ongoing dialogue that substantially complies with a plan's and the regulations' timelines should remain entitled to whatever discretion the plan documentation gives it. Hence, administrators in substantial compliance have no need to rush to judgment. We also note that, even for timely denials on the merits, "it is an abuse of discretion for ERISA plan administrators to render decisions without any explanation." *Bendixen v. Standard Ins. Co.*, 185 F.3d 939 (9th Cir.1999) (citing *Eley v. Boeing Co.*, 945 F.2d 276, 279 (9th Cir.1991)). The prospect of *de novo* review of untimely decisions should therefore only spur administrators into producing timely, reasoned decisions—exactly what ERISA aims to achieve.

## II

On the merits of the denial of benefits, Jebian points out that although the Plan requires that disability determinations be based on "objective medical evidence," VPA never had him examined by, or his medical records reviewed by, a doctor. Neither of the evaluations upon which VPA based its decision was prepared by a doctor. The HealthSouth assessment was conducted by physical therapists. The Rehab West report was prepared by a "vocational consultant."

Rehab West found Jebian to be capable of four occupations. The report first describes those occupations as ones "Jebian can do within his education and vocational background." The report adds: "It also appears that these occupations are within his physical capabilities as per the medical records provided," but, as noted, it is not clear from the record which medical records were reviewed by Rehab West, and Rehab West issued identical reports in 1996 and 1998 despite changes in Jebian's medical circumstances.

Jebian stresses, furthermore, that VPA's decision is in tension with the opinions of several doctors, including the doctors who treated him, all of whom agree that Jebian can neither sit nor stand except for a very short time and is therefore permanently disabled. Dr. James Stark examined Jebian at Hewlett Packard's request with regard to a workers' compensation claim. Dr. Stark wrote in October 1995, after Jebian had undergone his second back surgery, that "Mr. Jebian is not capable of working at this time because of his sitting and standing limitations. It is not clear whether he will ever be able to compete in the open labor market because of pain related physical limitations."

Dr. Lu, who has treated Jebian since February 1995, filled out a "Physician's Certification of Disability" for Jebian in September 1997. Dr. Lu noted on that form that Jebian "has tried to RTW [return to work] twice, but was unable to tolerate sitting more than a few minutes at a time, or standing." Dr. Lu filled out another Hewlett Packard Company form on January 30, 1998. This time Dr. Lu checked a box stating that his patient is "now totally disabled from any other work." Dr. Lu checked another box indicating that he did not "expect a fundamental or marked change in the future." Dr. Lu commented on the form that Jebian is subject to a "[s]evere limitation of sitting and standing ([maximum 5 minutes] at a time)" and "has too much pain to sit or stand more than a few minutes at a time."

Dr. Landes, who began treating Jebian in September 1998 after Jebian moved to a

new area, stated in his November 1998 letter in support of Jebian's appeal that patients with his condition "are permanently precluded from activities requiring ... prolonged sitting or prolonged standing," and that "[h]is current physical exam findings confirm the information in the records and support his claim of permanent disability, limiting him to sedentary work." Dr. Landes also reviewed in his letter the particular occupations cited by the Rehab West report, concluding that Jebian could not stand or sit for sufficiently sustained periods to perform the jobs recommended. Even the HealthSouth Report relied upon by VPA, for that matter, seems to indicate that Jebian can only sit for twenty minutes at a time and stand for thirty minutes at a time. Additionally, there was medical corroboration of Jebian's constant pain, in the form of extensive records concerning his participation in a study, supervised by Dr. Lacy, of a new pain medication. To obtain the medication, Jebian was required to keep a diary and visit Dr. Lacy's office frequently, which he did.

VPA chose, despite this evidence, to deny Jebian benefits in accord with the suggestion of the Rehab West report that there were four occupations in the market that Jebian was capable of performing.

The district court found that VPA did not abuse its discretion in doing so.

■ In light of this record evidence, applying *de novo* review to the district court's grant of summary judgment leads us to conclude that there is a genuine issue of fact concerning whether Jebian is disabled. *See Kearney v. Standard Ins. Co.,* 175 F.3d 1084, 1094 (9th Cir.1999) (en banc). There is medical evidence in the record from Jebian's treating physicians documenting the physiological basis for his back pain; the aggressive surgical treatment he underwent; the persistence of the pain, necessitating continued treatment with innovative painkillers; and professional assessments that Jebian was functionally precluded from standing or sitting for more than a few minutes at a time.[8]

VPA argues that Jebian's extensive medical evidence does not pertain to the relevant moment, which is the end of the temporary disability benefit period, March 3, 1998. A trier of fact, reviewing the entire record submitted to VPA, could conclude otherwise. For example, although VPA rejected records from 1995 as "immaterial" to Jebian's disability in March 1998, in fact those records are pertinent, although certainly not determinative. They both trace the history of Jebian's back injury and indicate that it is capable of causing total disability. Jebian's treating

---

8. After the district court granted VPA summary judgment, the Ninth Circuit ruled that ERISA plan decisions were to be governed by the "treating physician rule" that, in Social Security disability cases, grants special weight to the opinion of a claimant's own doctor. *See Regula v. Delta Family–Care Survivorship Plan,* 266 F.3d 1130, 1139 (9th Cir.2001). The Supreme Court, however, recently rejected the extension of a treating physician rule to disputed ERISA claims. *See Black & Decker Disability Plan v. Nord,* —— U.S. ——, 123 S.Ct. 1965, 1969, 155 L.Ed.2d 1034 (2003). On remand, the district court is therefore not to apply the treating physician rule. Of course, the opinions of Jebian's doctors may

(indeed, must) be accorded whatever weight they merit. Even without an "automatic[ ]" rule of deference, "[p]lan administrators ... may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician." *Id.* at 1966.

On *de novo* review, a district court may, in conducting its independent evaluation of the evidence in the administrative record, take cognizance of the fact (if it is a fact in the particular case) that a given treating physician has "a greater opportunity to know and observe the patient" than a physician retained by the plan administrator. *Id.* at 1971(quoting *Regula,* 266 F.3d at 1139 (internal quotation marks and citations omitted)).

physician, Dr. Lu, certified on January 30, 1998, that Jebian remained severely functionally limited due to his back injury. Dr. Lu's opinion was based on a June 1997 office visit and over two years' experience in treating Jebian's back ailment. Finally, Dr. Landes, contrary to the district court's understanding, did examine Jebian himself, in September 1998, and based his October 1998 letter in part on that examination.

A trier of fact, reviewing the evidence before VPA *de novo*, could infer that functional limitations confirmed by treating physicians in June 1997, May 1998, and September 1998, more likely than not existed in March 1998 as well, rather than disappearing before March 1998 and reappearing thereafter.

■ While under an abuse of discretion standard our review is limited to the record before the plan administrator, *McKenzie v. General Tel. Co.*, 41 F.3d 1310, 1316 (9th Cir.1994), this limitation does not apply to *de novo* review. *Mongeluzo v. Baxter Travenol Long Term Disability Benefit Plan*, 46 F.3d 938, 944 (9th Cir.1995) (on remand, district court has discretion to take additional evidence "when circumstances clearly establish that additional evidence is necessary to conduct an adequate *de novo* review of the benefit decision").[9] Now that we have clarified that *de novo* review is appropriate, the trial court must have an opportunity to determined whether to admit such additional evidence so as to "enable the full exercise of informed and independent judgment." *Id.* at 943; *see also id.* at 944(a "change in the posture of the case" can justify taking additional evidence on *de novo* review). We therefore remand to the district court to allow consideration of further developments of the record under the *Mongeluzo* standard and *de novo* review of the denial of the benefits claim.[10]

9. We take it that the dissent's contrary statement, citing *Kearney*, as well as its derivative conclusion that we should direct that the district court remand the decision to the plan administrator, assume an abuse of discretion standard of review, the central point upon which we disagree. *Mongeluzo* makes quite clear, as does *Kearney*, that where review is *de novo*, the record is not necessarily so limited. *Mongeluzo*, 46 F.3d at 944; *Kearney*, 175 F.3d at 1091–92. Similarly, the holding in *Saffle v. Sierra Pacific Power Co. Bargaining Unit Long Term Disability Income Plan*, 85 F.3d 455 (9th Cir.1996), regarding the need to remand to the administrator who applied the wrong legal standard is explicitly limited to the abuse of discretion context. *Id.* at 461 (recognizing that *Mongeluzo*, applying a *de novo* standard, remanded to the district court "for a factual determination under a proper construction of the terms of the plan," but holding that "remand [to the administrator] for reevaluation of the merits of a claim is the correct course to follow when an ERISA plan administrator, with discretion to apply a plan, has misconstrued the Plan and applied a wrong standard to a benefits determination").

10. This case, we note, is in a somewhat different posture than *Kearney*, because the district court originally reviewed the existing record on an abuse of discretion rather than a *de novo* basis. Consequently, even if the district court does not admit any further evidence, its role in conducting a bench trial on the entire record compiled by VPA will be entirely different from its previous deferential review. *Compare Kearney*, 175 F.3d at 1095 (opinion of Kleinfeld, J.) (even where district court decided summary judgment motion on the same review standard, it makes sense to remand for a bench trial on the record because "[t]he district judge will be asking a different question" and will have to make factual findings) *with id.* at 1099 (Reinhardt, J., concurring in the result) ("it would make no sense to remand" to review the same record *de novo* on the merits as was reviewed de novo on summary judgment). There is, consequently, no need to decide the question arguably left open in *Kearney* concerning the necessity for a remand under the circumstances of that case. *Compare id.* at 1094–95 (opinion of Kleinfeld, J.) (a majority of the court approved permitting the district court on re-

## Conclusion

We reverse the grant of summary judgment to VPA and remand for proceedings consistent with this opinion.

REVERSED and REMANDED.

TASHIMA, Circuit Judge, dissenting.

I dissent because the majority forfeits an independent ERISA administrator's plan-given authority to exercise its discretion when ruling on a plan member's claim, simply because the administrator was late in ruling on a claim for benefits and, in doing so, creates an inter-circuit conflict. The majority acknowledges that the plan "explicitly grants discretion to decide appeals from denials of claims for benefits to the plan administrator." Maj. op. at 1103. Further, the record reveals that the independent plan administrator, Voluntary Plan Administrator ("VPA"), did exercise its discretion in denying Jebian's appeal. To apply the non-deferential, de novo standard of review solely because of a procedural irregularity is an extreme measure warranted neither by the facts of this case nor by the cases on which the majority relies. As I explain below, all of those cases involved circumstances very different from those presented here. On the contrary, the majority's conclusion conflicts with all but one of the decisions that have dealt with the precise issue we face, as well as with the reasoning of our own precedent regarding the effect of procedural violations.

Jebian's letter appealing the denial of benefits is dated November 11, 1998, and was received by VPA on November 16, 1998. VPA responded on March 15, 1999, with a letter denying some of Jebian's claims and asking for further information regarding two of his claims. The letter explained in detail the reasons for VPA's decision. This letter was sent after the 60–day period required by 29 C.F.R. § 2560.503–1(h)(4)(i), but before the 120–day limit. On June 11, 1999, VPA wrote to Jebian to inform him that it had received some, but not all, of the medical records it had requested, and that the medical offices stated that Jebian had not returned the medical authorization forms they needed in order to release the rest of the records. VPA indicated that it would assume the claims were pending until it received the records. Jebian responded by filing this action on September 20, 1999. On November 5, 1999, VPA sent Jebian a letter again explaining the reasons for the denial of benefits and giving further explanations based on the records it had received.

The cases cited by the majority do not support its conclusion to strip the plan administrator of its discretion. For example, in *Rodriguez–Abreu v. Chase Manhattan Bank*, 986 F.2d 580 (1st Cir.1993), the decision regarding benefits was made by someone who was not authorized by the plan to make that decision. Likewise, in *Sanford v. Harvard Indus., Inc.*, 262 F.3d 590 (6th Cir.2001), the court affirmed the district court's determination that it was not the authorized party that made the benefits determination, but "the company at a meeting prompted by a union grievance held under the auspices of the [collective bargaining agreement]." *Id.* at 596–97. Thus, in both *Rodriguez–Abreu* and *Sanford*, unlike this case, the decision regarding benefits was made by someone who was not given discretionary authority by the plan. The First and Sixth Circuits therefore properly upheld the district courts' use of the de novo standard of review rather than the abuse of discretion

mand to try the case on the administrative record) *with id.* at 1096 (opinion of B. Fletcher, J.) (characterizing Judge Kleinfeld's opinion as one for a plurality), *and id.* at 1097

(opinion of Reinhardt, J.) (agreeing with Judge B. Fletcher's characterization of Judge Kleinfeld's opinion as a plurality opinion, "at least with respect to Parts III & IV").

standard. *Id.; Rodriguez–Abreu,* 986 F.2d at 584. Finally, in *Sharkey v. Ultramar Energy Ltd.,* 70 F.3d 226, 229–30(2d Cir.1995), the court stated that the denial of benefits is reviewed de novo if an unauthorized party makes the determination, but found that there was insufficient evidence of who actually made the determination in order to uphold the grant of summary judgment. It therefore reversed the grant of summary judgment and remanded. *Id.* at 230.

Unlike *Rodriguez–Abreu, Sanford,* and *Sharkey,* the instant case does not involve an unauthorized party making the benefits determination. VPA, as the majority concedes, is the party granted the discretionary authority by the plan to decide claim appeals. In cases in which the party that is given discretionary authority by the plan did not actually exercise its discretion, such as those cited by the majority, it makes sense to apply the de novo standard of review. Here, however, the discretion was exercised by the party in whom it was vested by the plan, VPA, albeit in an untimely manner.[1]

The Eighth Circuit addressed the precise question we face in a case with facts similar to those presented here, *McGarrah v. Hartford Life Ins. Co.,* 234 F.3d 1026 (8th Cir.2000). In *McGarrah,* the Eighth Circuit rejected the claimant's argument that the insurance company's failure to respond to his appeal from an adverse decision entitled the claimant to a less deferential standard of review. *Id.* at 1030–31. The insurance company in *McGarrah* completely failed to respond to the claimant's appeal. The court acknowledged that the company's failure to respond was "a serious procedural irregularity." *Id.* at 1031 (citing 29 C.F.R. § 2560.503–1(h)(3)). It relied, however, on its decision in *Buttram v. Cent. States, S.E. & S.W. Areas Health & Welfare Fund,* 76 F.3d 896 (8th Cir.1996), in which it stated that procedural irregularities "must have some connection to the substantive decision reached; i.e., they must cause the actual decision to be a breach of the plan trustee's fiduciary obligations." *Id.* at 901. Reasoning that the insurance company had made a thorough investigation and adequately explained the basis for its decision, the court in *McGarrah* concluded that the claimant failed to meet his burden of presenting evidence that the irregularity raised serious doubts about the integrity of the decision making process. *McGarrah,* 234 F.3d at 1031. The court therefore held that the district court properly applied the deferential abuse of discretion standard.[2] *Id.; see also Tillery*

1. The majority's emphasis on the fact that it was the plan itself that deemed the claim denied, not just the regulations, is irrelevant because the plan merely mirrored the language in the regulation in force at the time, 29 C.F.R. § 2560.503–1(h) (1999). Section 2560.503–1 was amended in 2000, removing the language stating that a claim is deemed denied on review if the claimant does not receive written notice within sixty or 120 days. *See* 65 Fed.Reg. 70246, 70265, 70268–69 (Nov. 21, 2000).

2. The majority dismisses *McGarrah* on the basis that "[t]here is nothing in *McGarrah* ... indicating that the plan in question contained the 'deemed ... denied' language at issue here." Maj. op. at 1107. The same regulations as were in force in the instant case, containing the "deemed denied" language, were in force at the time of the appeal of benefits in *McGarrah.* Thus, the appeal in *McGarrah* presumably was also deemed denied, at least by operation of the regulations, if not also by the plan itself, a question not addressed by *McGarrah.* Whether it is the regulation or the plan, or both, as in the instant case, that deems the claim denied, is irrelevant. The question is whether the import of the "deemed denied" language is that discretion is completely removed from the administrator, as the majority concludes, or whether the untimeliness is merely a procedural violation. Where, as here, the administrator has exercised its discretion, and the claimant has presented no evidence that the timing of the decision prejudiced him in any way, it does not make sense to strip the ad-

*v. Hoffman Enclosures, Inc.*, 280 F.3d 1192, 1198–99 (8th Cir.2002) (upholding the district court's decision to review the decision for an abuse of discretion where the administrator's "failure to provide [the beneficiaries] with timely notice of the denial and of their appeal rights" resulted in a procedural irregularity, but the irregularity did not "so undermine the decision of the plan administrator as to render it suspect"); *Clapp v. Citibank, N.A. Disability Plan (501)*, 262 F.3d 820, 827–28 (8th Cir.2001) (stating that a "sliding-scale" standard of review is appropriate only if the claimant presents material, probative evidence demonstrating a palpable conflict of interest or serious procedural irregularity that caused a serious breach of fiduciary duty, and concluding that a less deferential standard of review was not warranted).

Here, VPA's response detailed the reasons for the denial of Jebian's appeal. There is no evidence in the record that VPA relinquished the discretion granted it in the plan or that the untimeliness of its response raised doubts about the integrity of the decision-making process.[3]

"Ordinarily, a claimant who suffers because of a fiduciary's failure to comply with ERISA's procedural requirements is entitled to no substantive remedy." *Blau v. Del Monte Corp.*, 748 F.2d 1348, 1353 (9th Cir.1985) (citation omitted); *see also Kent v. United of Omaha Life Ins. Co.*, 96 F.3d 803, 807 (6th Cir.1996) ("Generally, the courts have recognized in E.R.I.S.A. cases that procedural violations entail substantive remedies only when some useful purpose would be served."). As the majority observes, the question of whether procedural violations influence the standard of review was left open in *Blau*.[4] In *Blau*, "there was no summary plan description, no claims procedure, and no provision to inform participants in writing of anything;" in short, the employer "failed to comply with virtually every applicable mandate of ERISA." 748 F.2d at 1353. We reasoned that the egregious procedural violations "work[ed] a substantive harm" by "alter[ing] the substantive relationship between employer and employee that disclosure, reporting and fiduciary duties sought to balance somewhat more equally." *Id.* at 1354. "Thus, in reviewing an administrator's decision, a court must consider continuing procedural violations in determining whether the decision to deny benefits in a particular case was arbitrary and capricious." *Id.*

While *Blau* left the question open, we have since required claimants to show that a violation of ERISA's procedural requirements " 'caused a substantive violation or themselves worked a substantive harm.' " *Parker v. BankAmerica Corp.*, 50 F.3d 757, 769 (9th Cir.1995) (quoting *Bogue v. Ampex Corp.*, 976 F.2d 1319, 1326 n. 33 (9th Cir.1992)); *McKenzie v. Gen. Tel. Co.*, 41 F.3d 1310, 1314–16 (9th Cir.1994) (rea-

---

ministrator of its authority, regardless of whether the "deemed denied" language is contained in the plan or the regulations.

3. Both *McGarrah* and the instant case are distinguishable from *Gritzer v. CBS, Inc.*, 275 F.3d 291 (3d Cir.2002), cited by the majority, at 1106, because, in *Gritzer*, the plan administrator "never made any effort to analyze" the appellants' initial claim for benefits, "much less to advise them of what that analysis disclosed," until after the litigation was filed. *Id.* at 295.

4. As the majority notes, *Blau* was decided before *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), when the default standard of review of administrator's decisions under ERISA was the deferential "arbitrary" or "capricious" standard. *Blau*, 748 F.2d at 1353. In the instant case, however, the default standard of review would be the abuse of discretion standard as well, because of the explicit grant of discretionary authority contained in the plan.

soning that the insurance company's procedural violation did not prejudice the claimant's "opportunity to obtain a full and fair review of his claim," and consequently affirming the district court's holding that the violation did not cause the claimant substantive harm); *Bogue*, 976 F.2d at 1326(concluding that the claimant "ha[d] not met his requirement of showing that any procedural defects caused him substantive harm or involved a substantive violation of ERISA"). Thus, even though *Blau* and its progeny deal with whether the claimant was entitled to a substantive remedy, rather than whether a less deferential standard of review should apply, the question we faced in *Blau* is the same as that we face here—that is, what should be the consequence of a procedural violation?

Similar to *Blau,* our sister circuits have adopted a rule of substantial compliance in determining whether violations of 29 C.F.R. § 2560.503–1's claims procedures warrant relief; that is, a decision regarding benefits will not be upset for procedural violations if the company has substantially complied with procedural requirements such that the claimant has "all the necessary information at a time when the participant still has a meaningful opportunity for appeal and for full and fair review." *Schleibaum v. Kmart Corp.,* 153 F.3d 496, 499(7th Cir.1998) (citations omitted); *see, e.g., Perrino v. S. Bell Tel. & Tel. Co.,* 209 F.3d 1309, 1318 (11th Cir.2000) (stating that claimants should not be able to avoid the exhaustion requirement if technical deficiencies in a claims procedure do not hinder effective administrative review of their claims); *Terry v. Bayer Corp.,* 145 F.3d 28, 39 (1st Cir.1998) (rejecting a claim for relief from an adverse decision regarding benefits where no prejudice resulted from inadequate notice of the denial, stating that "ERISA's notice requirements are not meant to create a system of strict liability for formal notice

failures"); *Heller v. Fortis Benefits Ins. Co.,* 142 F.3d 487, 492–93 (D.C.Cir.1998) (reasoning that, "although the initial letter from [the insurance company] informing[the claimant] of the denial of her disability benefits did not conform to the requirements of the regulations," the communication between the company, the claimant, and her lawyer insured that she understood the reasons for the denial of benefits and her right to appeal the decision); *Kent,* 96 F.3d at 807–08 (adopting the rule that a decision will be upheld even if procedures have been violated, if the claimant is "notified of the reasons for the denial of the claim and [has] a fair opportunity for review"); *Hines v. Mass. Mut. Life Ins. Co.,* 43 F.3d 207, 211 (5th Cir.1995) (stating that the "[f]ailure to fulfill procedural requirements generally does not give rise to a substantive damage remedy," except "when the violations are continuous and amount to substantive harm," and citing *Blau* ); *Sheppard & Enoch Pratt Hosp., Inc. v. Travelers Ins. Co.,* 32 F.3d 120, 127 (4th Cir.1994) (finding no prejudice in a plan administrator's violations of 29 C.F.R. § 2560.503–1's requirements of a timely and specific response, stating that the notice substantially complied with the regulation); *Donato v. Metro. Life Ins. Co.,* 19 F.3d 375, 382–83 (7th Cir.1994) (stating that substantial compliance with the regulations is sufficient, and concluding that the claimant had received information sufficient to permit effective review).

Thus, although *Blau* left open the issue of the applicable standard of review when ERISA's procedural requirements have been violated, it also set forth the principle that the claimant must show some type of prejudice or harm that results from a procedural violation of ERISA. We have relied on that principle in affirming benefits decisions, *see, e.g., Parker,* 50 F.3d at 769;

*McKenzie*, 41 F.3d at 1315–16, and other circuits have engaged in a similar analysis in determining the effect of procedural violations of ERISA, as the cases cited above demonstrate.

Our line of cases following *Blau* firmly establishes the law of the circuit that a showing of prejudice from a procedural violation of ERISA, *i.e.*, that the violation caused the claimant substantive harm, is required before relief can be granted based on such a violation. *Parker*, 50 F.3d at 769; *McKenzie*, 41 F.3d at 1314–16; *Bogue*, 976 F.2d at 1326 & n. 33. The majority's decision today literally disregards circuit precedent that is clearly relevant to the instant case without so much as even mentioning those cases.[5]

The majority relies on *Gilbertson v. Allied Signal, Inc.*, 328 F.3d 625 (10th Cir. 2003), in which the Tenth Circuit held that a substantial compliance approach was appropriate to determine whether a procedural violation should trigger de novo review. *Id.* at 634. *Gilbertson* thus stated that inconsequential violations of procedural requirements would not entitle the claimant to de novo review where the plan and the claimant are engaged in "an ongoing, good faith exchange of information." *Id.* at 635. The facts of *Gilbertson* are quite different from the facts presented here, however. In *Gilbertson*, the claim was denied for failure to submit certain kinds of evidence. The claimant then submitted evidence addressing those objections, but the plan administrator "never issued a reasoned evaluation of the new evidence," and never contacted the claimant again, even after the claimant asked for a response. *Id.* at 634. Because of the complete lack of meaningful dialogue and the lack of a reasoned decision on the new evidence, the court concluded that de novo

review should have been applied. *Id.* at 636–37.

The facts presented here are very different. Contrary to the majority's characterization of the facts, VPA and Jebian were, in the words of the district court, engaged in "meaningful dialogue" regarding Jebian's appeal. VPA received Jebian's letter appealing the denial of benefits on November 16, 1998. VPA sent a letter to Jebian on March 15, 1999, explaining in detail the reasons for its denial and asking for further information on two of Jebian's claims. The majority makes much of the fact that this letter was written on the 119th day. Regardless of when the letter was sent, VPA was engaged in a good faith exchange of information with Jebian. On June 11, 1999, VPA informed Jebian that it still had not received all the medical records it had requested and that Jebian apparently had not signed the medical authorization forms they needed. VPA assumed that the claims would remain pending until it received the records. Jebian, however, responded by filing this action. The facts indicate, therefore, that VPA was attempting to engage in a meaningful exchange of information with Jebian but Jebian's response was to file this suit. Unlike *Gilbertson*, de novo review is not appropriate.

Besides being bad law, the majority's position is also bad policy. The district court rejected Jebian's argument for de novo review, noting that Jebian had "shirk[ed] his responsibility under the Plan" to provide VPA with the medical records VPA requested in order to render its decision. In cases such as this one, where the delay is caused by the claimant's failure to furnish the plan administrator with the needed medical records, the majority's decision will force plan adminis-

---

**5.** Moreover, no other circuit has treated a procedural violation *simpliciter* as triggering de novo review.

trators to deny such claims within the permitted period, rather than to risk awaiting receipt of the required medical records so that a more reasoned decision, one based on a review of the full medical records, can be made. *Cf. id.* (stating that a "hair-trigger rule" requiring de novo review of every case that involves a procedural violation "could inhibit collection of useful evidence and create perverse incentives for the parties").

There is no indication in the record that Jebian argued below, nor does he argue on appeal, that "the untimely notice so infected the decision making process as to render the decision to deny suspect." *Tillery,* 280 F.3d at 1199. Thus, nothing in the record, and certainly not the case law, supports applying a de novo standard of review in this case. For these reasons, I respectfully dissent.