PALMER DISTRIBUTING CORP., Agricultural Products Trading Cy., S.A., S.A. Cellpack, Manufacture De Biscuits Parein N.V., Oscar Tausig,. and Pan American World Airways, Inc., Libelants,

v.

THE S.S. AMERICAN COUNSELOR, her engines, boilers, etc., and United States Lines Company, Respondent.

BERRY BROTHERS, Inc., Libelant,

v.

THE S.S. AMERICAN COUNSELOR, her engines, boilers, etc., and United States Lines Company, Respondent.

United States District Court
S. D. New York.

Sept. 4, 1957.

Hill, Rivkins, Middleton, Louis & Warburton, New York City, for libelants. Yorkston W. Grist, New York City, of counsel.

Kirlin, Campbell & Keating, New York City, for respondent. Edward L. Smith, James Proud, New York City, of counsel.

CASHIN, District Judge.

These two admiralty actions for cargo damage were consolidated for trial and are brought by libelants as cargo owners against the respondent, United States Lines Company, as owner and operator of the S.S. American Counselor.

### Findings of Fact

1. Libelant, Berry Bros., Inc., delivered on board the S.S. American Counselor at Baltimore, Maryland, on November 8, 1952, the following cargo:— 10 ctns paint, 5 buckets and 21 ctns lacquer and one drum lacquer thinner. The remaining libelants delivered on board the S.S. American Counselor in New York on November 13th and 14th 1952, the following cargo:—

| Libelant | Cargo |
|---|---|
| Palmer Distributing Corp. | 5 drums vegetable oil |
| Agricultural Products Trading Cy., S.A. | 16 drums, 96 pails, 105 ctns. lubricating oil |
| S.A. Cellpack | 96 tubes cellulose film |
| Manufacture De Biscuits Parein N.V. | 272 drums oleo stock |
| Oscar Tausig | 10 tierces pork bungs or casings |
| Pan American World Airways, Inc. | 2 boxes disinfectant 1 ctn. engine parts |

Clean bills of lading were issued by the ship for all the cargo referred to and with the exception of one drum and five buckets of lacquer delivered by Berry Brothers, Inc. all the cargo was stowed in No. 1 upper 'tween deck of the S.S. American Counselor.

2. The stowage of the No. 1 upper 'tween deck had been commenced in Baltimore, at which time 22 packages of tin plate weighing approximately 23 tons, and 8 cases of steel sheets weighing 2 tons, and the Berry cargo were stowed in this compartment. After leaving Baltimore the S.S. American Counselor went to Philadelphia, then to Albany and then to New York where the remaining general cargo in suit was also stowed in the No. 1 upper 'tween deck. The stowage of the tin plate and steel sheets and Berry cargo was performed by stevedores at Baltimore. Likewise, the stowage of the general cargo was performed by stevedores in New York. The ship's Chief Officer inspected the stowage when it was complete, but did not actively supervise the performance of the work. The ship's No. 1 lower 'tween deck compartment was empty.

3. The S.S. American Counselor left New York on November 15, 1952. On November 17, 1952 she encountered heavy seas and weather with winds of a force from 9 to 10, Beaufort Scale. Such weather continued with the wind reaching a force of 11 for a short period on the 18th. On November 18th, at about 4:00 A.M. it was discovered that the tin plate stowage in No. 1 upper 'tween deck had broken loose and some measures were taken to secure it. At about 8:30 A.M. it was discovered that the cargo in upper 'tween deck had again broken loose and at that time no measures could be taken to remedy the situation due to the fact that the compartment was filled with suffocating fumes and the deck was dangerously slippery from the oil and grease which had spilled from their containers after being broken by shifting heavy tin and steel plates cargo. This condition continued throughout the remainder of the voyage.

4. On November 19th the storm abated and the S.S. American Counselor proceeded to Antwerp without further incident. There was no structural damage to the ship nor had the stow of any other cargo been broken. The cargo in suit owned by the libelants was discharged at Antwerp in a badly damaged condition.

■ 5. The weather conditions encountered by the S.S. American Counselor were reasonably to be expected in a North Atlantic voyage in November. The configuration and sensitivity to weather of the No. 1 upper 'tween deck and the heavy nature of the metal cargo already stowed in that compartment made the stowage of general cargo of the nature in suit in that compartment improper unless required by absolute necessity. If such stowage was undertaken, due care required that extraordinary measures be taken to secure the stow. There was no necessity to stow the cargo in suit in the No. 1 upper 'tween deck nor were extraordinary measures taken to secure the stow.

## Conclusions of Law

I. Judgment for libelants.

■ In this case there is no dispute that libelants' cargo was duly delivered to the ship and clean bills of lading were issued, and the cargo arrived at its destination in severely damaged condition. The issue is whether or not respondent has sustained its burden of showing the damage to the cargo was caused not by its negligence but an excepted peril of the sea. General Foods Corporation v. The Troubador, D.C., 98 F.Supp. 207.

■ Respondent's evidence in support of its contention that the weather encountered by the S.S. American Counselor was unforeseeable and unusual fails to convince. None of the surrounding facts tend to support this contention, for the evidence reveals the ship suffered no structural damage; the stows of its other cargo apparently remained intact; the bad weather was of relatively short duration and the weather itself and accompanying winds as reported on the ship's log were not of an unusual nature for the North Atlantic at that time of year. The Court fails to find a scintilla of evidence to support respondent's contention as to errors in navigation or management of the ship.

On the other hand, the only evidence the respondent offers to prove the cargo in suit was properly stowed is the testimony of the Chief Officer. The only conclusion that can be fairly drawn from the testimony of the Chief Officer, insofar as the stowage of the cargo in suit is concerned, is that he was reluctant to stow the libelants' cargo in the No. 1 upper 'tween deck and that he, himself, made a general inspection of the cargo after it was stowed. His testimony throughout the proceedings in this case is such as to convince this Court that he, himself, did not actively supervise the stowage of this cargo nor did he know whether it was properly done or not. Neither the persons responsible for placing the cargo in suit in the No. 1 upper 'tween deck, nor the persons who actively supervised the stowage of the general cargo testified. On the record before it, this Court can only conclude that there was no pressing necessity to stow this general cargo in the No. 1 upper 'tween deck with the steel and tin plates and that the cargo, having been so stowed, was not sufficiently and properly secured for a voyage of the nature it was to take.

This Court finds no substance either in law or fact to respondent's contentions as to the res judicata effect of the findings of the Commercial Court of Antwerp. Establissements Edouard Materne v. The S.S. Leerdam, D.C., 143 F. Supp. 367.