**TAISHO MARINE & FIRE INSURANCE CO., LTD.,**
Plaintiff-Appellant,

v.

**M/V SEA–LAND ENDURANCE;**
Sea-Land Service, Inc.,
Defendant-Appellee.

No. 86–5747.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 9, 1987.

Decided April 27, 1987.

---

Erich P. Wise, Long Beach, Cal., for defendant-appellee.

Gerald M. Fisher and Ronald D. Kent, Long Beach, Cal., for plaintiff-appellant.

Before FERGUSON, BOOCHEVER and WIGGINS, Circuit Judges.

BOOCHEVER, Circuit Judge:

### OVERVIEW

Taisho Marine and Fire Insurance Company (Taisho) appeals the district court's judgment in favor of Sea-Land Service Incorporated (Sea-Land). The court held that the peril of the sea defense under the Carriage of Goods by the Sea Act (COGSA), 46 U.S.C. app. § 1304(2)(c) (Supp. III 1985), prevented Taisho from recovering payments made to a shipper for cargo lost by Sea-Land. Taisho contends that the district court (1) reached a conclusion of law not supported by the facts, (2) improperly considered Taisho's status as an insurer, and (3) incorrectly placed the burden of proof on Taisho. We affirm.

### FACTS

In March 1984, a forty-foot aluminum cargo container packed with Sony stereo equipment was loaded aboard the M/V Sea-Land Endurance (Endurance) in Kobe, Japan. The container was stowed on the vessel's deck on the starboard side near her stern. The owner of the vessel, Sea-Land, issued bills of lading which are contracts of carriage subject to COGSA, 46 U.S.C.

§ 1300–1315. Sony insured the cargo with Taisho.

The vessel encountered adverse weather conditions enroute to Long Beach, California. Between midnight and 9:00 a.m. on March 16, 1984, the cargo and the storage container were destroyed. Taisho paid the assured's claim for loss of cargo and brought this action as subrogee against the vessel Endurance and its owner, Sea-Land. The vessel was dismissed as Sea-Land agreed to be responsible for any liability imposed on the vessel.

The district court found that there was "no evidence of unseaworthiness on the part of the vessel or incompetent management of the ship by its Master." Further, the court concluded that Taisho did not fulfill its burden of proof to show that the loss of the cargo resulted from some fault of the crew or the vessel. The proof showed that the loss was caused by the weather alone. The court held that the peril of the sea defense, 46 U.S.C. § 1304(2)(c) was established by Sea-Land thereby exonerating Sea-Land from liability. The court wrote a Memorandum of Intended Decision and adopted Sea-Land's findings of fact and conclusions of law.

Taisho appeals.

## DISCUSSION

### 1) The Peril of the Sea Defense

██ Taisho argues that the district court's factual findings fail to meet the statutory requirements of the affirmative defense of peril of the sea provided by COGSA, 46 U.S.C. § 1304(2)(c). We review the court's determination of whether the established facts fall within the parameters of the peril of the sea defense under the deferential, clearly erroneous standard. *See United States v. McConney*, 728 F.2d 1195, 1202 (9th Cir.) (en banc), *cert. denied*, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

COGSA, 46 U.S.C. § 1304(2)(c) provides in pertinent part that "[n]either the carrier nor the ship shall be responsible for loss or damage arising or resulting from—

. . . . .

(c) Perils, dangers, and accidents of the sea."

██ While "perils of the sea" is a term of art not uniformly defined, the generally accepted definition is "a fortuitous action of the elements at sea, of such force as to overcome the strength of a well-found ship or the usual precautions of good seamanship." G. Gilmore & C. Black, *The Law of Admiralty*, § 3–32 at 162 (2d ed. 1975); *States S.S. Co. v. United States*, 259 F.2d 458, 460–61 (9th Cir.1958), *cert. denied*, 358 U.S. 933, 79 S.Ct. 316, 3 L.Ed.2d 305 (1959); *R.T. Jones Lumber Co. v. Roen S.S. Co.*, 213 F.2d 370, 373 (7th Cir.1954); *Philippine Sugar Centrals Agency v. Kokusai Kisen Kabushiki Kaisha*, 106 F.2d 32, 34–35 (2d Cir.1939). Case law fails to set out a bright line test to determine whether cargo was lost by a peril of the sea. Rather, the cases indicate that the validity of the statutory defense depends on the nature and cause of the loss under the particular facts of a case.

Taisho cites *J. Gerber & Co. v. S.S. Sabine Howaldt*, 437 F.2d 580 (2d Cir.1971), for the proposition that a series of factors must be established in order to use the peril of the sea affirmative defense. Taisho contends that the peril of the sea defense only exists upon proof of several of the following factors: (1) the extent of structural damage to the vessel, (2) the extent of any speed reduction, (3) the extent of any cross-seas, (4) how far the vessel was blown off course, and (5) to what extent other vessels in the same storm experienced cargo-related damage. Taisho fails to note that these factors are not the cumulative total of all the indicia that can be used to determine the existence of a peril of the sea.

In *Gerber*, the court stated that in deciding whether a case falls within the statutory purview of peril of the sea, the central inquiry is into the measure of the violence of the winds and tempestuousness of the sea. "These are matters of degree and not amenable to precise definition." *Id.* at 596. Gerber was a shipper seeking recovery for damage caused by sea water to cargo transported by the S.S. Sabine Howaldt.

The court held that the vessel was seaworthy, there was no negligence on the part of the carrier, and that the damage was caused by hurricane force winds and resulting cross-seas which forced up hatch covers admitting sea water to the holds. The loss was from a peril of the sea and the vessel owner was exonerated from any liability.

■ *Gerber* states that a very important measure considered on the peril of the sea issue is the wind velocity on the Beaufort Scale because of a direct relationship between wind velocity and the size and shape of the waves. *Id.* at 596. No Beaufort Scale index exists which divides cases into those qualifying for the peril of the sea exception and those which do not. Nevertheless, courts have almost always found a peril of the sea where the force has been 11 or greater and very few cases are found to qualify where the winds are force 9 or less. *Id.* Wind velocity, however, is only a rough measure and must be considered with other indicia such as nature and extent of damage to the ship, cross-seas and other factors.

> While the seaworthiness of a ship presupposes that she is designed, built and equipped to stand up under reasonably expectable conditions this means no more than the usual bad weather which is normal for a particular sea area at a particular time. It does not, however, include an unusual combination of the destructive forces of wind and sea which a skilled and experienced ship's master would not expect and which the ship encountered as a stroke of bad luck. Hurricane force winds and turbulent cross-seas generating unpredictable strains and pressures on a ship's hull are an example.

*Id.* (footnote omitted).

The district court found that the vessel Endurance encountered at least four waves in excess of 60 feet which rolled the vessel more than 40 degrees. A substantial number of waves between 40 and 60 feet in height battered the vessel. During the storm, between 0200 and 0900 hours, the sustained winds remained between Beaufort Force 10 (Whole Gale, 48–55 knots) and 12 (Hurricane force, 64–71 knots) with gusts in excess of 95 knots. Throughout this period, the master maintained a reduced speed of 17 knots (normal operating speed is 21.5 knots) to minimize the risk of damage to the vessel, cargo, and personnel while maintaining rudder control. The court found that only a few vessels in the area between 1946 and 1984 reported seas of equal or greater height and that the sustained winds of 65 knots were the highest ever recorded in the area.

On March 17, the crew noted that (1) the port gangway was washed overboard, (2) two firehoses and nozzles were missing, (3) the port lifeboat embarkation ladder was damaged, and (4) the starboard pilot ladder was damaged. In addition, containers at Hatch 10, portside and Hatch 11, starboard (the container in question) were lost overboard and eight other containers were found damaged, four severely and four slightly. Neither the stacking frame cargo system nor the locking devices used to secure the container were damaged or failed during the storm. Taisho does not dispute the validity of these findings or the finding that the vessel was seaworthy and that Sea-Land exercised due diligence to render the Endurance seaworthy.

Taisho's cited cases fail to support the contention that unless the district court finds several factors existed out of the five previously enumerated, the court cannot conclude that the peril of the sea defense exonerated Sea-Land. Taisho's cites the following cases in support of its proposition: *Virgin Island Corp. v. Merwin Lighterage Co.*, 251 F.2d 872 (3d Cir.), *cert. denied*, 357 U.S. 929, 78 S.Ct. 1369, 2 L.Ed.2d 1372 (1958) (*No Peril*—Two barges next to each other, one with cargo lashed down—the other without its cargo lashed down, court said lashing could have saved cargo); *States S.S. Co.*, 259 F.2d 458 (*No Peril*—Beaufort Force 9, mountainous seas, inherent condition of the hull rather than the sea caused the sinking); *Ore S.S. Corp. v. D/S A/S Hassel*, 137 F.2d 326 (2nd Cir.1943) (*No Peril*—Beaufort Force 9–10 for 3 days, two windows knocked in, lifeboat damaged, reduced speed, rivet

missing, *winds not extraordinary*); *Philippine Sugar*, 106 F.2d 32 (*Peril*—3 days at Beaufort Force 9–10, lifeboat crushed, steel superstructure broken or carried away, blown 160 miles off course); *American Int'l Ins. Co. v. S.S. Fortaleza*, 446 F.Supp. 221 (D.P.R.), *aff'd*, 585 F.2d 22 (1978) (*Peril*—Winds Beaufort Force 6–11 for 24 hours, vessel rolled 40 degrees and continued rolling 30–40 degrees, seas in excess of 40 feet, lost 30 trailers, foremast snapped off, railing and steel deck curbing destroyed); *Freedman & Slater Inc. v. M/V Tofevo*, 222 F.Supp. 964 (S.D.N.Y. 1963) (*No Peril*—Alteration in log book showing higher Beaufort Forces not supported by other evidence); *Palmer Distrib. Corp. v. S.S. American Counselor*, 158 F.Supp. 264 (S.D.N.Y.1957) (*No Peril*—Beaufort Force 9–10 for 3 days, *not unusual weather for North Atlantic*, no structural damage, other cargo not damaged).

▪ The district court's findings of unusually high winds and seas, the rolling of the ship, the damage to the ship, the loss and damage of other containers, and Sea-Land's due diligence in making the vessel and cargo system seaworthy support the conclusion that the cargo was lost because of a peril of the sea.

### 2) Status Issue

The district court recognized that Taisho, having paid Sony for the lost cargo, was subrogated to all rights, claims and causes of action for the loss of that cargo. The district court later stated in the decision that

> [t]his case has been brought, not by the owner of the Cargo, but by its insurer who has paid the loss. Plaintiff is in the business of assuming risks. In this case it assumed the risk of insuring safe passage for a Cargo which it knew would transverse the North Pacific in the month of March when heavy seas are not unexpected. Plaintiff's entire effort at attempting to show how the Master of the Endurance might have taken other measures to navigate this ship amount only to Monday morning quarterbacking.

Taisho argues that the district court improperly considered Taisho's status as an insurer in rendering the decision. Sea-Land argues that the district court was just making observations of fact and did not diminish Taisho's right to recover.

▪ The question on appeal is whether the statement by the district court indicates a misapplication of the principles of subrogation warranting reversal. In other words, did the district court apply an incorrect legal standard to Taisho's claim because it was an insurer. Under ordinary principles of subrogation, the subrogee (Taisho) "stands in the shoes" of the subrogor (Sony). *Community Nat'l Bank v. Fidelity & Deposit Co.*, 563 F.2d 1319, 1323 n. 5 (9th Cir.1977). Thus, the validity of any affirmative defense must be evaluated as if Sony brought the action. Because the discussion by the district court of Taisho's status as an insurer is superfluous to the decision, it does not indicate that Taisho was held to a different legal standard, especially in light of the court's earlier recognition of Taisho's status as a subrogee.

### 3) Burden of Proof

▪ Taisho argues that the court placed the burden of proof as to the issue of negligence on the wrong party as the peril of the sea affirmative defense requires the showing of an absence of negligence. Sea-Land contends that once they have proved that the loss was from the sea alone, the burden then shifts to Taisho to show a concurrent act to defeat Sea-Land's peril of the sea affirmative defense. The selection of the appropriate burden of proof is a question of law reviewed de novo. *See McConney*, 728 F.2d at 1201–04.

▪ Generally, under COGSA, a shipper establishes a prima facie case against the carrier by showing that the cargo was delivered in good condition to the carrier but was discharged in a damaged condition. 46 U.S.C. §§ 1302, 1303; *Gerber*, 437 F.2d at 584; Gilmore & Black, *supra*, § 3–43 at 183. The burden of proof then shifts to the vessel owner to establish that the loss

came under a statutory exception to COG-SA. 46 U.S.C. § 1304(2); *Gerber,* 437 F.2d at 584; *States S.S. Co.,* 259 F.2d at 460; Gilmore & Black, *supra,* § 3–43 at 183.

▆ The burden then returns to the shipper to show, at a minimum, concurrent causes of loss in the fault and negligence of the carrier, unless it is a type of negligence excluded under COGSA. *Gerber,* 437 F.2d at 588; Gilmore & Black, *supra,* § 3–43 at 184. The carrier then has the burden of allocating the loss between (1) the loss caused by his fault and negligence and (2) the loss covered under the exception. *Vana Trading Co. v. S.S. Mette Skou,* 556 F.2d 100, 105 (2d Cir.), *cert. denied, Flota Mercante Grancolombiana, S.A. v. Vana Trading Co., Inc.,* 434 U.S. 892, 98 S.Ct. 267, 54 L.Ed.2d 177 (1977). Failure of the carrier to do so results in the carrier bearing the full loss. *Gerber,* 437 F.2d at 588.

▆ The burden of proof, however, alters when a carrier seeks exoneration under the peril of the sea exception. 46 U.S.C. § 1304(2)(c).

> [I]n a sense, the absence of negligence as a concurring cause may be said to enter into the very definition of a sea peril, so that, in order to establish an exception under this clause, the ship would have to establish freedom from negligence.

Gilmore & Black, *supra,* § 3–32 at 162. Thus, under the peril of the sea exception, the carrier acquires the additional burden of showing freedom from negligence.

▆ A prima facie case against Sea-Land was established by the stipulated facts that the cargo was delivered in good condition to the Endurance and never returned. The burden then shifted to Sea-Land to prove the loss fell under one of the statutory exceptions of COGSA. In choosing the peril of the sea defense, Sea-Land acquired the additional burden of proving freedom from negligence. The district court concluded that "[t]he proof establishes that the loss was caused by the weather alone." By finding that Sea-Land had established that the weather was the sole cause of the loss, the court inferredly found that Sea-Land had sustained its bur-

den of proving that negligence was not a cause of the loss. At that point, the burden was placed on Taisho to show a concurrent cause of the loss. Taisho failed to meet this burden. We conclude that the district court correctly allocated the burdens of proof.

### CONCLUSION

Taisho's argument that without proof of several enumerated factors there can be no peril of the sea defense is without merit. Taisho's second argument fails to show that the district court considered Taisho's rights as an insurer differently from that of a subrogee. Finally, Sea-Land sustained its burden of proving that the loss was caused solely by the perils of the sea and Taisho failed to rebut that evidence. Accordingly, we affirm the judgment of the district court.

AFFIRMED.