**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

KAREN LAMANTIA,
                    *Plaintiff-Appellee,*

v.

VOLUNTARY PLAN ADMINISTRATORS,
INC.; HEWLETT-PACKARD COMPANY
EMPLOYEE BENEFITS ORGANIZATION,
                    *Defendants,*

and

HEWLETT-PACKARD COMPANY
EMPLOYEE BENEFITS ORGANIZATION
INCOME PROTECTION PLAN,
                    *Defendant-Appellant.*

No. 03-15706

D.C. No.
CV-01-01933-LKK

OPINION

Appeal from the United States District Court
for the Eastern District of California
Lawrence K. Karlton, Senior Judge, Presiding

Argued and Submitted
October 6, 2004—San Francisco, California

Filed March 23, 2005

Before: Cynthia Holcomb Hall, Melvin Brunetti, and
Susan P. Graber, Circuit Judges.

Opinion by Judge Brunetti

3507

**COUNSEL**

Mark A. Perry, Esq., Paul DeCamp, Esq., Washington, D.C., Joseph P. Busch III, Esq., Susan B. Burr, Esq., Gibson, Dunn & Crutcher LLP, Palo Alto, California, for the appellant.

Peter Stubbs, Esq., Sacramento, California; Richard J. Chiurazzi, Esq., Mastagni, Holstedt & Amick, Sacramento, California, for the appellee.

**OPINION**

BRUNETTI, Circuit Judge:

Defendant Hewlett-Packard Company Employee Benefits Organization Income Protection Plan ("the Plan") appeals the district court's grant of summary judgment in favor of plaintiff Karen LaMantia awarding her disability benefits. The Plan argues that the district court committed three errors in holding that LaMantia's complaint was timely, in applying the treating physician rule, and by reviewing the claims administrator's decision under a *de novo* standard of review. We agree with the district court that LaMantia's complaint was timely. However, because the district court erred in applying the treating physician rule and erred in reviewing the claims administrator's decision under a *de novo* standard of review, we reverse and remand for reconsideration of whether LaMantia was improperly denied disability benefits.

## FACTS AND PROCEEDINGS BELOW

LaMantia was employed at Hewlett-Packard for fourteen years and was a member of the Plan, which provides disability benefits to qualifying claimants. The Plan's claims administrator, Voluntary Plan Administrators ("VPA"), makes the determination whether a claimant is "totally disabled" under the Plan's definitions. The member is entitled to appeal an initial denial of benefits by submitting a written request for an appeal. The Plan states that if the member "does not receive written notice of the Claims Administrator's decision with respect to his or her claim within one hundred twenty (120) days after the date the Claims Administrator receives the request for review, the claim shall be deemed to have been denied on review." This "deemed-denial" provision mirrored a Department of Labor regulation then in effect that applied to LaMantia's 1997 appeal. *See* 29 C.F.R. § 2560.503-1(h)(1), (h)(4)(1997)(allowing a claimant to commence a lawsuit if the insured had not received a response 120 days after the appeal). Regarding an appeal, Hewlett-Packard Company Employee Benefits Organization ("the Organization") "is the named fiduciary which has the discretionary authority to act with respect to any appeal from a denial of benefits." VPA is given "the discretionary power to construe the language of the Plan and make the decision on review on behalf of the Organization." The claimant must file a lawsuit challenging a denial of benefits "within four (4) years after the occurrence of the loss for which a claim is made."

VPA granted LaMantia short-term disability benefits, which terminated on May 8, 1997. LaMantia filed a claim for long-term disability ("LTD") benefits, which VPA denied on May 14, 1997. The denial letter reminded LaMantia of her right to appeal the decision and said that she would receive a written decision of her appeal within 120 days of the request for the review, but if she did not receive the written decision within the 120 day period, "the appeal can be considered denied." LaMantia appealed VPA's denial of LTD benefits on

June 10, 1997, which meant that 120 days from her appeal date would be October 8, 1997.

Beginning in September and October of 1997, there were several communications between VPA and LaMantia's counsel leading to an extension of time for LaMantia to file additional medical reports. On September 18, 1997, LaMantia's counsel sent a copy of a medical report with a letter informing VPA that an additional medical report would be forthcoming. On September 19, 1997, LaMantia's counsel and VPA participated in a telephone call. VPA reported this call as follows:

> Indicated to him [LaMantia's counsel] that as long as his client understands that her appeal will remain pending until we receive all the info. they wish to be considered with the appeal[.] I have no problem waiting for him to gather what ever info. he feels is necessary for the appeal. . . . I told him that if he feels that it is truely [sic] necessary then he should do so, but please send me something in writing indicating this is his choice to delay the claim.

On October 3, 1997, LaMantia's counsel sent a letter to VPA memorializing their "agreement that the appeal review . . . will not conclude until such time as Ms. LaMantia has obtained a report from an evaluator of her choice and submitted said report," and that he hoped the report would be sent in two months.

No report was submitted within two months; instead, there was a breakdown in communication for at least the next two years. LaMantia's counsel claims that a letter with additional medical reports eventually was sent on July 15, 1999. The Plan claims that it never received this letter and that the last communication it had with LaMantia's counsel was in October 1997. On August 4, 2000, VPA received a letter from LaMantia's counsel inquiring about the status of her appeal and referring to the July 15, 1999, letter. VPA responded the

next month by stating that it had not received the July 15, 1999, letter and requested that this information be forwarded. LaMantia's counsel sent the reports from the July 15, 1999, letter on October 3, 2000. Nearly a year after this latest submission, VPA still had not rendered a final decision. After telephone calls by LaMantia's counsel, on August 24, 2001, VPA finally sent a letter to LaMantia's counsel that reaffirmed the initial denial of LTD benefits on the merits, analyzing the medical records and concluding that she is suffering from illnesses that LTD benefits do not cover and that, in the absence of these illnesses, she could return to work.

LaMantia filed a complaint on October 17, 2001, alleging a claim for disability benefits pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.* She filed a single cause of action against the Plan, VPA, and the Organization. LaMantia argued that she was entitled to LTD benefits because she is "totally disabled" as defined by the Plan.

After stipulating to the dismissal of VPA, the parties filed cross-motions for summary judgment. The district court issued an order dismissing the Organization, granting LaMantia's motion as to the Plan for benefits, and denying the Plan's motion. On April 17, 2003, the Plan timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1291.

## DISCUSSION

### I.   Timeliness of LaMantia's Complaint

We review *de novo* the interpretation and meaning of contract provisions. *Student Loan Fund of Idaho, Inc. v. U.S. Dep't of Educ.*, 272 F.3d 1155, 1161 (9th Cir. 2001), *amended*, 289 F.3d 599 (9th Cir. 2002). We also review *de novo* whether a claim is barred by the applicable statute of

limitations. *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 779-80 (9th Cir. 2002).

The Plan argues that the district court erred in disregarding the Plan's contractual limitations period. Under the Plan, the claimant must file a lawsuit challenging a denial of benefits "within four (4) years after the occurrence of the loss for which a claim is made." The Summary Plan Description states that this means the action must be commenced within four years from the date "when the disability occurred." Under the Plan, an employee cannot be deemed "totally disabled," and qualify for short-term disability benefits, unless "the Member is continuously unable to perform each and every duty of his or her Usual Occupation." To be deemed "totally disabled" to qualify for LTD benefits the claimant must show she "is continuously unable to perform any occupation for which he or she is or may become qualified by reason of his or her education, training, or experience." The Plan concludes that under these definitions a claimant who is working cannot be considered "disabled" and therefore no "occurrence of the loss" has occurred yet. Thus, the Plan reasons that LaMantia's date of the "occurrence of the loss" occurred on August 8, 1996, the first day she was unable to work. The Plan argues that LaMantia's suit had to be filed within four years from August 8, 1996, making her filing on October 17, 2001, untimely.

The district court refused to apply the Plan's contractual limitations period. While noting that contractual limitations periods in disability plans could apply, the district court stated that the claimant must have notice of the denial of her claim and that the limitations period must be reasonable. The district court held that, under the Plan, LaMantia did not receive notice as of August 8, 1996, that her claim had been denied. Next, the district court held that the limitations period was unreasonable because LaMantia's claim could have accrued and run through the entire limitations period before she even sought disability benefits.

**[1]** Instead, the district court applied Ninth Circuit precedent governing when a claim accrues. This court has held that "an ERISA cause of action accrues either at the time benefits are actually denied, or when the insured has reason to know that the claim has been denied." *Wetzel v. Lou Ehlers Cadillac Group Long Term Disability Ins. Program*, 222 F.3d 643, 649 (9th Cir. 2000)(en banc) (citations omitted). Applying *Wetzel*, the district court held that the earliest LaMantia could have had notice of the denial of coverage was when her claim was deemed denied, which was 120 days from her appeal date of June 10, 1997. However, due to a counting error the district court held that December 10, 1997 (rather than October 8, 1997), was the earliest date that the limitations period began to run. Therefore, the district court concluded that LaMantia's complaint, filed on October 17, 2001, was not time-barred.

**[2]** We agree with the district court that LaMantia's complaint was timely, but we reach that conclusion under a different analysis. Whether the accrual date for the four-year limitations period stems from the Plan's contractual provision or from federal law does not matter. Nor does it matter whether the accrual date runs from the date the claimant identified as the starting date (onset) of total disability, or some later date. Regardless whether the Plan's contractual limitations period or federal law governs, the totality of VPA's representations and conduct between September 1997 and August 2001 estopped the Plan from asserting either limitations defense. These representations and conduct indicated to LaMantia that her appeal was placed in suspension pending both VPA's receipt of further medical reports and a final decision on the merits, and that there was no reason for LaMantia to file a lawsuit while VPA considered her appeal.

**[3]** "As a general rule, a defendant will be estopped from setting up a statute-of-limitations defense when its own prior representations or conduct have caused the plaintiff to run afoul of the statute and it is equitable to hold the defendant responsible for that result." *Allen v. A.H. Robins Co., Inc.*, 752

F.2d 1365, 1371-72 (9th Cir. 1985). Estoppel may apply not only against a party asserting a statute of limitations defense, but also against a party asserting a contractual limitations defense based on a specified time period in an ERISA disability plan. *See Doe v. Blue Cross & Blue Shield United of Wis.*, 112 F.3d 869, 875-77 (7th Cir. 1997). Before estoppel can apply, the following conditions must be met:

> "1) the party to be estopped must be apprised of the facts; 2) the other party must be ignorant of the true state of facts, and the party to be estopped must have acted so that the other party had a right to believe that the party intended its conduct to be acted upon; and 3) the other party relied on the conduct to its prejudice."

*Hinton v. Pac. Enters.*, 5 F.3d 391, 396-97 (9th Cir. 1993) (quoting *Golden v. Faust*, 766 F.2d 1339, 1341 (9th Cir. 1985)); *see also Doe*, 112 F.3d at 876 (stating that "if the defendant through representations or otherwise prevents the plaintiff from suing within the limitations period, the plaintiff may add to the remaining limitations period the entire period during which the defendant's action was effective in delaying the suit").

When a plaintiff seeks to *recover benefits* under an ERISA plan based on an equitable estoppel theory, the Ninth Circuit requires the plaintiff to satisfy a six-prong test. *See Pisciotta v. Teledyne Indus., Inc.*, 91 F.3d 1326, 1331 (9th Cir. 1996)(per curiam); *Greany v. W. Farm Bureau Life Ins. Co.*, 973 F.2d 812, 821-22 (9th Cir. 1992). However, this six-prong test is inapplicable to the present case because LaMantia is not seeking to recover benefits based on an equitable estoppel theory concerning the substance of her claim. Rather, estoppel is applicable here because this case involves representations and conduct by VPA which caused LaMantia *not to file suit* within the limitations period. When estoppel has been invoked in cases arising under ERISA involving similar

circumstances, courts have not required heightened standards and instead have applied general estoppel principles. *See Hinton*, 5 F.3d at 396-97 (applying *Golden v. Faust* to the plaintiff's argument that the defendant should be estopped from asserting statute of limitations defense); *Bourgeois v. Pension Plan for Employees of Santa Fe Int'l Corps.*, 215 F.3d 475, 481-82 (5th Cir. 2000) (holding that defendants estopped from arguing claim is time-barred before internal appeals committee); *Ralph v. Lucent Techs., Inc.*, 135 F.3d 166, 171 (1st Cir. 1998) (citing *Doe*, 112 F.3d at 875-78, court holds that "the only impact on Lucent's ERISA plan is the extension of time to make application for certain benefits. No variation in the terms of benefits or their application is implicated."); *Doe*, 112 F.3d at 875-77 (applying estoppel to toll limitations period in ERISA disability benefits plan). Due to these representations and conduct, the issue is whether the Plan should be estopped from asserting any limitations defense; LaMantia's ultimate theory of recovery is unrelated to equitable estoppel.

The record reveals that, over the course of four years, VPA made several representations to LaMantia regarding the status of her internal appeal which LaMantia reasonably relied upon, and that LaMantia's reliance caused her prejudice by her failure to file suit within either limitations period. Importantly, during the course of LaMantia's appeal VPA never relied on or even mentioned the contractual limitations period or the deemed-denial provision, and it never considered LaMantia's claim to be fully denied until August 24, 2001, when a final decision *on the merits* was rendered. On September 19, 1997, VPA represented to LaMantia's counsel that her appeal would remain pending until VPA received all of the medical information that LaMantia wanted to be considered and that there was "no problem waiting for him to gather what ever info. he feels is necessary for the appeal." On October 3, 1997, LaMantia's counsel sent a letter to VPA memorializing VPA's representations that "the appeal review . . . will not conclude until such time as Ms. LaMantia has obtained a

report from an evaluator of her choice and submitted said report." Not once did VPA object to this initial extension of time. Indeed, between 1997 and 2000, VPA never informed LaMantia that her claim had been denied and, for all LaMantia knew, her appeal was still being considered by VPA. Due to VPA's statements, there was no need to file a lawsuit because VPA was considering her appeal.

Even more significant is VPA's response when VPA received a letter from LaMantia's counsel on August 4, 2000 —4 days before, according to the Plan, the contractual limitations period expired—inquiring as to why VPA had not yet rendered a final decision. Rather than mention that the limitations period to file a lawsuit was about to expire or invoke the deemed-denial provision, VPA waited more than a month to write a letter to LaMantia's counsel. Instead of asserting that LaMantia's claim was now time-barred, this September 12, 2000, letter *allowed even more time to file medical records*. VPA could have replied that the contractual limitations period had already expired, or that her claim had been deemed denied by the passage of time. Instead, this action clearly demonstrates that VPA did not intend to rely on either the Plan's limitations provision or the deemed-denial provisions and, instead, wanted additional information to consider the appeal. Again, due to these representations, rather than file a lawsuit LaMantia waited for VPA's final decision.

**[4]** Finally, after nearly another year had passed without a final decision, LaMantia's counsel made further contact with VPA to inquire about the still-pending appeal. Again, instead of informing LaMantia that her claim was time-barred, VPA rendered a final decision on August 24, 2001, that was based on the merits, analyzing all the medical evidence VPA now had and reaffirming its 1997 initial denial. Not until litigation ensued did the Plan begin to rely on its contractual limitations period, much less the deemed-denial provision. Instead, VPA's communications lulled LaMantia into believing that her appeal was being considered and that there was no reason

to file a lawsuit if the internal appeals process would ultimately result in LTD benefits.

[5] We conclude that the totality of VPA's representations and conduct between September 1997 and August 2001 estopped the Plan from relying on either the statute or contractual limitations period. VPA rendered a final decision on the merits on August 24, 2001, and LaMantia's filing of her complaint only two months later on October 17, 2001, was timely.

## II.   Application of the Treating Physician's Rule

We review *de novo* the district court's selection of the appropriate burden of proof. *Taisho Marine & Fire Ins. Co., Ltd. v. M/V Sea-Land Endurance*, 815 F.2d 1270, 1274 (9th Cir. 1987).

[6] Prior to the Supreme Court's decision in *Black & Decker Disability Plan v. Nord*, 538 U.S. 822 (2003), the Ninth Circuit applied the treating physician rule in ERISA disability cases. *See Regula v. Delta Family-Care Disability Survivorship Plan*, 266 F.3d 1130 (9th Cir. 2001), *vacated*, 539 U.S. 901 (2003). Under this rule, cited several times by the district court, the opinions of a claimant's treating physician are given special deference and may be disregarded only for clear and convincing reasons based on substantial evidence in the record. *See Regula*, 266 F.3d at 1140. In *Nord*, the Supreme Court rejected this rule, holding that "ERISA and the Secretary of Labor's regulations" implementing the statute "do not command plan administrators to credit the opinions of treating physicians over other evidence relevant to the claimant's medical condition." 538 U.S. at 825.

*Nord* was decided after the district court's decision in this case. The district court relied heavily on *Regula*, citing it several times and applying the rule throughout its decision. *See, e.g.*, (E.R. at 541)("First, consistent with *Regula*, I consider the opinions of the plaintiff's treating physicians, Dr. Agresti

and Dr. Herman . . . ."); (E.R. at 542)(stating that these opinions were "not controverted by the opinions of the doctors hired by VPA"); (E.R. at 543)("Because the opinions of the plaintiff's treating physicians are uncontroverted, this court may disregard them only for clear and convincing reasons based on substantial evidence in the record. *See Regula*, 266 F.3d at 1140.").

**[7]** When the district court applies the wrong burden or quantum of proof, the judgment should be reversed. *See Carvalho v. Raybestos-Manhattan, Inc.*, 794 F.2d 454, 456 (9th Cir. 1986); *White v. Wash. Pub. Power Supply Sys.*, 692 F.2d 1286, 1289 (9th Cir. 1982)(Kennedy, J.)("Thus, the district court erred not only in allocating the burden of proof, but also in setting the quantum of proof necessary."). After *Nord*, opinions by LaMantia's treating physicians are afforded no special deference, and the Plan is not required to rebut these opinions by clear and convincing evidence. The case must be remanded for the district court to conduct a new review of the evidence in light of *Nord*.

### III.   *De Novo or Abuse of Discretion Standard of Review*

Conclusions of law are reviewed *de novo*, "including the trial court's determination of its own standard of review of an ERISA administrator's determination of eligibility for benefits." *LeTourneau Lifelike Orthotics & Prosthetics, Inc. v. Wal-Mart Stores, Inc.*, 298 F.3d 348, 350-51 (5th Cir. 2002).

Challenges to an ERISA plan administrator's denial of benefits are reviewed under a *de novo* standard "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). If the plan does grant such discretion, the court applies the abuse of discretion standard of review. *Jebian v. Hewlett-Packard Co. Employee Benefits Org. Income Prot. Plan*, 349 F.3d 1098, 1103 (9th Cir. 2003),

*petition for cert. filed*, 72 USLW 3553 (U.S. Feb. 20, 2004) (No. 03-1202).

In *Jebian*, this court held "that where, according to the plan and regulatory language, a claim is 'deemed . . . denied' on review after the expiration of a given time period, there is no opportunity for the exercise of discretion and the denial is *usually* to be reviewed *de novo*." *Id.* (emphasis added). The exception that would warrant deference is when the plan administrator "is engaged in a good faith attempt to comply with its deadlines." *Id.* A deferential standard may apply to "an administrator engaged in genuine, productive, ongoing dialogue that substantially complies with a plan's and the regulations' timelines." *Id.* at 1108.

*Jebian* involved the same Plan at issue in this case. After VPA denied Jebian's claim for LTD benefits, Jebian appealed the denial on November 11, 1998. *Id.* at 1101, 1103. VPA responded on March 15, 1999, one day before Jebian's claim would have been deemed denied under the federal regulations then in effect and under the terms of the Plan. *Id.* at 1103, 1104. The March 15, 1999, letter responded to Jebian's objections to the denial of benefits, but it also left the appeal pending to consider further medical documentation. *Id.* at 1102. In June 1999, VPA wrote Jebian stating that it was still awaiting some medical records and that the appeal remained pending. *Id.* Rather than wait for a decision by VPA, Jebian invoked the deemed-denial provision and, on September 29, 1999, filed a lawsuit. *See id.* On November 5, 1999, VPA finally sent Jebian a letter denying his claim for LTD benefits. *Id.* The district court reviewed VPA's decision for an abuse of discretion, but the Ninth Circuit reversed. *Id.*

This court stated that a deferential standard of review applied when the administrator exercises discretion. *Id.* at 1104. There is no exercise of discretion, however, "when a decision is, under the Plan, necessarily the mechanical result of a time expiration rather than an exercise of discretion." *Id.*

at 1105. The court stated that a deemed-denial is "an automatic decision rather than one calling for the exercise of the administrator's discretion." *Id.* Due to VPA's dragging its feet, the deemed-denial provision allowed Jebian to file suit in federal court rather than wait indefinitely for VPA to finally render a final decision.

The court did leave open the possibility for a more deferential review when the deemed-denial deadline passed but the administrator was engaged in a good faith exchange of information with the claimant. *Id.* at 1107. The facts in *Jebian*, though, did not demonstrate good faith exchange of information. *Id.* VPA never requested additional information until one day before the deemed-denial deadline. *Id.* The court stated that 119 days of silence is not productive nor reasonably informative to the claimant. *Id.*

*Jebian* discussed the Tenth Circuit case of *Gilbertson v. Allied Signal, Inc.*, 328 F.3d 625 (10th Cir. 2003), which had discussed and cited with approval an earlier withdrawn *Jebian* decision, which also had applied the *de novo* standard of review. *See Jebian v. Hewlett-Packard Co. Employee Benefits Org. Income Prot. Plan*, 310 F.3d 1173 (9th Cir. 2002), *opinion withdrawn and superseded*, 349 F.3d 1098 (9th Cir. 2003). In *Gilbertson*, the plaintiff filed an appeal of her denial of benefits that was received by the claims administrator on January 14, 1999. 328 F.3d at 629. The claims administrator sent a fax on February 16, 1999, extending the deadline for submission of medical information. *Id.* This was the last communication the plaintiff received. *Id.*

Without informing Gilbertson, the claims administrator referred her file to one of its medical consultants, who decided that an independent review should be taken. Gilbertson's attorney sent a letter on June 1, 1999, asking for a decision, but the claims administrator did not respond. *Id.* Instead, a medical appointment was scheduled, and Gilbertson received a letter on August 20, 1999, informing her of an

appointment. *Id.* Gilbertson cancelled the appointment and, invoking the deemed-denial provision, filed suit on August 25, 1999. *Id.* at 629-30.

The Tenth Circuit applied a *de novo* standard of review to the deemed-denial. *Id.* at 634-36. The court stated that under appropriate circumstances it would apply a "substantial compliance" rule: "in the context of an ongoing, good faith exchange of information between the administrator and the claimant, inconsequential violations of the deadlines or other procedural irregularities would not entitle the claimant to *de novo* review." *Id.* at 635. However, because the administrator had stopped communicating with Gilbertson altogether, there was no meaningful dialogue and thus the *de novo* standard applied. *Id.* at 636.

**[8]** The circumstances of this case fall into the *Jebian* exception for when an abuse of discretion standard of review will apply. As a threshold matter, the Plan does give VPA "the discretionary power to construe the language of the Plan and make the decision on review," so the abuse of discretion standard would normally apply. *See Firestone*, 489 U.S. at 115. Further, as *Jebian* requires, there was good faith communication between the claims administrator and the claimant. There were letters and telephone conversations between VPA and LaMantia's counsel beginning several weeks before the deemed-denial date that led to extensions of time, all of which were at the request of LaMantia to enable her to file additional medical information. This is unlike both *Jebian* and *Gilbertson*. In *Jebian*, the only communication was VPA's letter sent one day before the deemed-denial deadline. *See* 349 F.3d at 1104. In *Gilbertson*, the claims administrator completely failed to communicate with the claimant. *See* 328 F.3d at 636.

Most significantly, also unlike *Jebian* and *Gilbertson*, claimant LaMantia was the party who sought an extension of time which caused the deadline to file documents to occur

beyond the deemed-denial date. In both *Jebian* and *Gilbertson*, the claims administrator was responsible for the deemed-denial deadline to pass without a written final decision. In both *Jebian* and *Gilbertson*, this led to the claimants relying on the deemed-denial provision to file suit. In contrast, the deemed-denial date was apparently an impediment to LaMantia, who requested more time so that she could file additional documentation with VPA beyond that date.

Further, by allowing more medical information to be filed past the deemed-denial period when the claimant makes such a request, and by subsequently rendering a decision on the merits, VPA exercised its discretion. By exercising its discretion and allowing material to be filed after the deemed-denial period when the claimant is requesting the extension, the claims administrator should not be subjected to the more scrutinizing *de novo* standard of review. *Accord Jebian*, 349 F.3d at 1106 ("Deference to an exercise of discretion requires discretion actually to have been exercised."). Otherwise, claims administrators would have no incentive to allow extensions beyond the deemed-denial period when claimants seek an extension because they would be subject to *de novo* review.

## CONCLUSION

The district court is affirmed on its holding that LaMantia's complaint was timely. The district court is reversed and the case remanded for the district court to review under the abuse of discretion standard, without applying the treating physician rule, LaMantia's claim that she was improperly denied disability benefits. Each party shall bear their own costs.

**AFFIRMED in part; REVERSED in part and REMANDED.**